**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 30 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CARLTON MAURICE FOWLER,

Plaintiff-Appellant,

v.

TOM HODGE, M.D., Jess Dunn
Correctional Center; KAREN
BLAKELY, Administrator of Health
Services, Jess Dunn Correctional
Center; ERIC FRANKLIN, Warden,
Jess Dun Correctional Center;
DENNIS COTNER, Medical Services
Coordinator, Oklahoma Department of
Corrections; RON WARD, Director of
the Oklahoma Department of
Corrections; MELINDA GUILFOYLE,
Administrative Review
Authority/Designee for the Director of
the Oklahoma Department of
Corrections; STEVE BECK, Deputy
Warden, Jess Dunn Correctional
Center; JAMES WALKER, Chief of
Security, Jess Dunn Correctional
Center; TODD BROWN, ARDEN
ESPE, CASEY BENEFIELD,
Correctional Officers at the Jess Dunn
Correctional Center; KEVIN
COLLINS, Correctional Official at the
Jesse Dunn Correctional Center;
STEVE GRAGG, Health Services
Administrator at the Jess Dunn
Correctional Center,

Defendants-Appellees.

No. 03-7008
(D.C. No. 01-CV-257-S)
(E.D. Okla.)

**ORDER AND JUDGMENT** [*]

Before **SEYMOUR** , **BRISCOE** , and **LUCERO** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Carlton Fowler appeals from the entry of summary judgment for defendants in this prison civil rights suit. He also challenges the denial of a motion to supplement his pleadings. Reviewing the grant of summary judgment de novo, *Sealock v. Colorado* , 218 F.3d 1205, 1209 (10 th Cir. 2000), and the denial of leave to supplement for abuse of discretion, *Walker v. UPS, Inc.* , 240 F.3d 1268, 1278-79 (10 th Cir. 2001), we affirm.

Plaintiff claims defendants were deliberately indifferent to serious medical needs relating to back pain he has endured throughout his present incarceration. This claim has three distinct components.

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff's initial complaint concerns the failure of prison officials at the Jess Dunn Correctional Center (JDCC) to grant his medical request for a lower bunk assignment. The pertinent factual background begins when plaintiff was taken into custody and processed at the Lexington Assessment and Reception Center in March 1996. His medical history was taken and he reported recurrent back pain, R. Doc. 1, Att. A at 2, but there is no indication of any treatment or accommodation required at that time. In April 1997, he re-injured his back and was prescribed medication, ice, and exercises. *Id.*, Att. A at 3. A few months later, he was transferred to the Cimarron Correctional Facility (CCF), where a nurse issued a medical memo directing that plaintiff be assigned a lower bunk because of "back problems." *Id.*, Att. B at 1. In November 2000, another CCF nurse reconfirmed this lower-bunk restriction with a second medical memo. *Id.*, Att. B at 2.

Notwithstanding the two medical memos, a cell assignment form prepared at CCF in October 2000 did not indicate any lower bunk restriction but instead assessed plaintiff's cell assignment status as "Random Eligible/Unrestricted." R. Doc. 10 (Special Report), [1] Att. I-2. A medical screening summary prepared

---

[1]     The Special Reports filed by the Oklahoma Department of Corrections were initially omitted from the appellate record. It is the duty of the district court clerk to provide the necessary record for a pro se appeal, 10th Cir. R. 10.2(C), 11.2(A), and we directed the clerk to supplement the record.

just before plaintiff's transfer to the JDCC noted no health restrictions or limitations. R. Doc. 1, Att. A at 5. The health summary prepared when plaintiff was received at the JDCC thus noted no restrictions on bunk assignment. Fortuitously, plaintiff was assigned a lower bunk in the orientation building, where he stayed until January 4, 2000. He was then placed in a prison dormitory and assigned an upper bunk.

JDCC physician Tom Hodge examined plaintiff a week later pursuant to his request for a medically-based reassignment to a bottom bunk. Finding no evidence of disc disease, Dr. Hodge noted a "subjective chronic complaint of back soreness" and recommended use of a back support. R. Doc. 1, Att. A at 6. Disagreeing with the CCF medical memos (which plaintiff says he presented to support his complaints), Dr. Hodge concluded a lower-bunk restriction was not warranted. *Id.* Although Dr. Hodge subsequently prescribed several medications to address plaintiff's reported symptoms, *see id.*, he consistently maintained that plaintiff did not have a medical condition requiring a particular bunk assignment. *See, e.g.*, R. Doc. 10, Att. G.

JDCC officials adhered to Dr. Hodge's professional conclusions and did not grant plaintiff's request for a medically-based bunk assignment. In the meantime, however, plaintiff was placed on a general bottom-bunk waiting list and, on February 22, 2000, he was assigned a lower bunk. He seeks damages for the

-4-

interim pain and suffering allegedly caused by the rejection of his medical request for such an assignment.

The Eighth Amendment protects prisoners from "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This formulation includes a subjective component that is satisfied "if a prison official knows of and disregards an excessive risk to inmate health or safety." *Sealock*, 218 F.3d at 1209 (quotation omitted). It also includes an objective component that is satisfied if the inmate's medical condition was "diagnosed by a physician as mandating treatment" or "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotation omitted). Assuming the necessity for treatment requested would not be obvious to a lay person, the medical judgment of the physician–even if possibly negligent–is not subject to second-guessing in the guise of an Eighth Amendment claim. *See, e.g.*, *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993).

The district court held plaintiff's claim deficient as a matter of law because "plaintiff is merely asserting a difference of opinion as to the kind and quality of medical treatment necessary under the circumstances." R. Doc. 43 at 12. We agree. While there is medical evidence in the record–indeed, from Dr. Hodge himself–to indicate that plaintiff experienced chronic back pain, there is no

evidence that any physician ever found it necessary or appropriate to address the problem through a medical restriction on his bunk assignment. While two nurses at the CCF admittedly provided plaintiff with a lower-bunk restriction, his examining physician at the JDCC specifically found the restriction unwarranted, a facially credible professional judgment as to whether that particular course of treatment was medically warranted. *See generally Logan v. Clarke*, 119 F.3d 647, 648-50 (8 th Cir. 1997) (affirming summary judgment for prison defendants on similar bunk-assignment claim).

Plaintiff alleged, and defendants have not disputed, that Dr. Hodge refused to review plaintiff's medical record when he first assessed plaintiff's request for a lower-bunk assignment. The omission is immaterial in a strict legal sense, however, as Dr. Hodge later reviewed plaintiff's records and reaffirmed that there was "no medical reason justifying . . . bottom bunk approval for medical reasons." R. Doc. 10, Att. G.

Plaintiff also raises Dr. Hodges' refusal to refer him to a specialist for assessment of his back pain. Dr. Hodge examined plaintiff on numerous occasions and never found a physical basis for his reported symptoms that might call for the services of a specialist. Under the general principles recited above, plaintiff must show he had an objectively serious need for a specialist, Dr. Hodge knew of and disregarded the need, and he suffered substantial harm as a result.

*Oxendine v. Kaplan*, 241 F.3d 1272, 1276-77 (10 th Cir. 2001). Assuming the chronic pain plaintiff reported satisfies the harm requirement, *cf. id.* at 1278; *Sealock*, 218 F.3d at 1210, the critical question here focuses on his objective need for a specialist.

Whether and when routine treatment should be augmented with the assistance of a specialist involves an exercise of medical judgment that is generally not subject to redress under the Eighth Amendment. *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10 th Cir. 1992); *see also Estelle*, 429 U.S. at 107 ("question whether . . . additional diagnostic techniques or forms of treatment [are] indicated is a classic example of a matter for medical judgment"). Of course, if a patient's need is so plain that "even a lay person would easily recognize the necessity for a [specialist's] attention," the failure to refer the patent could be actionable. *Oxendine*, 241 F.3d at 1278 (quotation omitted). We cannot say on this record that this point was reached here.

The last aspect of plaintiff's complaint involves a prison work policy. Plaintiff and other inmates were sitting in a courtyard during work hours. Pursuant to prison work rules, officers rounded up the idle inmates for redeployment to the prison garden. Plaintiff complained he could not work there because of his back. When he resisted transfer to the garden, he was handcuffed and led toward the security unit. Plaintiff claims that on the way the escorting

officer grabbed his arm to change direction, twisting his back and causing him pain. Plaintiff was then given the choice of going to the garden or continuing on to the security unit. He chose the garden. Once there, he complained of back pain and the supervising officer excused him from the work being done. At the end of the shift, plaintiff walked the 400 yards back to the main compound, which he alleges caused him considerable pain.

These facts do not create a triable case under the Eighth Amendment. With respect to the escorting officer's conduct, the controlling standard "excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (quotation omitted). Plaintiff's description of the incident in his subsequent grievance clearly placed the officer's conduct within the scope of this exclusion. *See* R. Doc. 19, Att. K at 6-7. Plaintiff's general complaint about being taken with other idle inmates to the prison garden is equally meritless since he had no medical restriction precluding that work. And the consideration he was shown upon arriving at the garden belies any claim of constitutionally actionable misconduct in connection with the incident.

Finally, plaintiff challenges the district court's denial of his motion to supplement his pleadings a second time with allegations of retaliation by prison officials in response to this litigation. The district court correctly noted that such

-8-

post-suit conduct falls within the compass of Fed. R. Civ. P. 15(d). The court added that "[t]o the extent plaintiff's motion to supplement seeks the addition of new parties, it is controlled by Fed. R. Civ. P. 15(a) and is actually a motion to amend," R. Doc. 42 at 1-2, and then denied the motion under Rule 15(a) authority. Plaintiff contends the court abused its discretion by deviating from the Supreme Court's direction in *Griffin v. County School Board*, 377 U.S. 218, 227 (1964), that "Rule 15(d) . . . plainly permits supplemental amendments to cover events happening after suit, and it follows, of course, that persons participating in these new events may be added." *See generally* 3 James Wm. Moore et al., *Moore's Federal Practice* § 15.30 at 15-107.

As a general matter, "the standard used by courts in deciding to grant or deny leave to supplement is the same standard used in deciding whether to grant or deny leave to amend." *Id.* at 15-109. In either case, the district court exercises its sound discretion in deciding whether such considerations as delay and relative prejudice favor or disfavor augmentation of the case with the new allegations. *Compare, e.g.*, *Walker*, 240 F.3d at 1278 *with Moore v. Reynolds*, 153 F.3d 1086, 1116 (10 th Cir. 1998). That is exactly what the district court did here in determining that granting the motion would cause undue delay and prejudice to defendants. We see no abuse of discretion in the court's informed and particularized assessment of the relevant considerations.

-9-

The judgment of the district court is AFFIRMED.

Entered for the Court


Stephanie K. Seymour
Circuit Judge