**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**January 19, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

JOHN HADLEY FISHER,

      Plaintiff-Appellant,

  v.

MIKE MULLIN, Warden; BOBBY
BOONE; RON WARD; LEE MANN;
KEN YOTT,

      Defendants-Appellees.

No. 06-7061
(D.C. No. 05-CV-131-FHS)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH, ANDERSON**, and **BALDOCK**, Circuit Judges.

      Plaintiff John Hadley Fisher, an Oklahoma state inmate proceeding pro se

here as in the district court, appeals the district court's order granting summary

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

judgment to defendants on his claims arising under 42 U.S.C. § 1983. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

*Background*

Mr. Fisher was transferred to the Oklahoma State Prison (OSP) in 1992 to serve a life sentence for murder. In early 2002, he was transferred to H Unit following his disciplinary conviction on charges of possession of marijuana. According to Mr. Fisher, H Unit was also known as "Redline," and was used unofficially to punish and coerce prisoners by keeping them in unconstitutionally harsh conditions of confinement.

Mr. Fisher alleges that in October 2002, a conflict developed between the prison warden and a prison case manager as the result of a letter sent to the warden by Fisher's then-attorney. He maintains that defendants attempted to question him about the conflict, but he refused. He asserts that defendants kept him in H Unit until July 2005 in retaliation for refusing to discredit the prison case manager.

In his federal lawsuit, Mr. Fisher claimed that defendants violated his constitutional rights by (1) housing him in H Unit under conditions imposing atypical and significant hardship (2) in retaliation for exercising his Fifth Amendment right to remain silent during the investigation concerning the case manager, (3) denying him copies of cases from circuits other than the Tenth Circuit, and (4) confiscating and destroying photographs of H Unit sent to him by

-2-

his brother, even though the same photographs were permitted when re-sent by his attorney.[1]

At the district court's direction, defendants filed a *Martinez* report.[2] After denying Mr. Fisher's motion to compel discovery, the district court granted defendants' motion for summary judgment. Mr. Fisher appeals, arguing (1) the district court's entry of summary judgment was improper because discovery had not been allowed and there existed disputed facts, (2) the district court erred in denying his claims under the Fifth, Eighth, and Fourteenth Amendments and the Equal Protection Clause based on his placement in H Unit, and (3) the district court erred in denying his claims based on access to case law from other circuits and the initial confiscation of photographs of H Unit.

---

[1] The parties dispute whether Mr. Fisher exhausted his prison grievance remedies on all of his claims before filing suit, as required by 42 U.S.C. § 1997e(a). We do not resolve this issue because we affirm the district court on the merits. *See Woodford v. Ngo*, ___ U.S. ___, 126 S. Ct. 2378, 2392 (2006) (addressing dismissal under 42 U.S.C. 1997e(c)(2), stating PLRA exhaustion requirement is not jurisdictional; district court may "dismiss plainly meritless claims without first addressing what may be a much more complex question, namely, whether the prisoner did in fact properly exhaust available administrative remedies").

[2] *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (per curiam) (approving order requiring prison officials to investigate facts surrounding inmate's civil rights action to construct an administrative record from which court may determine jurisdiction and assess frivolity).

*Standards of Review*

"We review the grant of summary judgment de novo, applying the same standard the district court should apply under Fed. R. Civ. P. 56(c)." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (quotation omitted). For dispositive issues on which the plaintiff will bear the burden of proof at trial, he must "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) ( quotation omitted). "[E]vidence, including testimony, must be based on more than mere speculation, conjecture, or surmise. Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (citation and quotations omitted).

We review a district court's discovery rulings for an abuse of discretion. *Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 742-43 (10th Cir. 2005). Because Mr. Fisher is representing himself, we liberally construe his pleadings; however, we do not act as his advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

*Placement in H Unit*

Most of Mr. Fisher's claims arose from his placement in H Unit. He first alleges that his transfer to H Unit was punitive, and therefore he was entitled to

due-process procedures before and during his placement there. He asserts that the denial of due process violated his Fourteenth Amendment rights.

The defendants' *Martinez* report includes an affidavit from Warden Mullin stating, among other things, that there was no such thing as "Redline," and further, that H Unit was part of the general population, although it, like many cell blocks at OSP, was restrictive. In response, Mr. Fisher filed affidavits from himself and ten fellow H-Unit inmates, each stating the number of months he had been housed there without due process, alleging that H Unit "differ[ed] greatly" from other cell blocks by imposing "atypical and significant hardship," and contending that H Unit was "an administratively created punishment unit to which is used [sic] in an arbitrary, capricious and malicious fashion by [the prison] administration." R. Doc. 25, Affidavits 1 through 11; *see also id.* Doc. 30 ("declaration" stating same allegations signed by plaintiff and 38 other H Unit inmates). Mr. Fisher argues that the district court was required to accept these allegations as true when considering defendants' summary judgment motion.

To withstand summary judgment, Mr. Fisher was required to identify specific facts to establish his claims concerning H Unit. We recognize that "a *Martinez* report is treated like an affidavit and the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence." *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992). Nevertheless, a

"[p]laintiff's conclusory allegations are insufficient to put a material fact in dispute." *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992).

We determine that the affidavits Mr. Fisher produced in opposition to the *Martinez* report failed to "set forth facts that would be admissible in evidence," because they presented only conclusory allegations. *Hall*, 935 F.2d at 1111. Accordingly, the district court was not required to accept them as true and they were insufficient to demonstrate that there was a disputed issue of material fact sufficient to resist summary judgment.

Mr. Fisher next claims that defendants retaliated against him for exercising his Fifth Amendment right not to answer questions about the prison case manager. "Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights. However, an inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1263-64 (10th Cir. 2006) (quotation omitted), *cert. denied*, 127 S.Ct. 675, 75 U.S.L.W. 3283 (U.S. Nov. 27, 2006) (No. 06-6669). Mr. Fisher's "allegations of retaliation must fail because he has presented no evidence that the defendants' alleged retaliatory motives were the 'but for' cause of the defendants' actions." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Mr. Fisher's placement in H Unit could not have been in retaliation for his refusal to cooperate in an internal investigation because he was transferred to H Unit in March 2002, and the alleged

-6-

precipitating event in the case-manager controversy did not occur until October 2002. Mr. Fisher also has produced no facts to support his claim that his continued assignment to H Unit was retaliatory.

Mr. Fisher further contends that he was entitled to due process before being transferred to H Unit and also periodically while he was there. He asserts that the conditions in H Unit were similar to those in the administrative segregation unit, whereby prisoners were denied contact visits, a yard permitting contact with other inmates, jobs, and programs. He also claims that the conditions of confinement in H Unit imposed atypical and significant hardship as compared to general-population cell blocks. He maintains that H Unit was "unquestionably [the Oklahoma Department of Corrections'] harshest and most restrictive unit." Aplt. Br. at 26.

In his affidavit, the warden stated that (1) OSP provided housing primarily for maximum-security offenders, (2) all inmates were afforded very limited outdoor exercise, (3) H Unit, Northwest 1, where Mr. Fisher was housed, was a general-population unit, (4) non-contact visiting was imposed on all inmates in all eight cell blocks of H Unit, as well as to inmates classified as level one and those in Units D and E, and (5) work assignments were available on a very limited basis and were assigned based on conduct, attitude and an ability to cooperate. R. Doc. 39, Attach. 23 at 1-3.

The Supreme Court has held

> that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Defendants do not dispute Mr. Fisher's claims about the conditions in H Unit. In fact, they confirm those claims. But Mr. Fisher did not produce facts showing that H Unit's conditions were harsher, or even different, than those in other comparable units in the maximum-security prison. Therefore, he was not entitled to due process before or during his placement at H Unit.

For his last claim relating to H Unit, Mr. Fisher asserts that his equal protection rights were violated when he was transferred to and retained at H Unit, while other prisoners with worse institutional records were not. He argues on appeal that defendants' responses to his discovery requests would have established that other prisoners were treated more favorably than he.

"Equal protection is essentially a direction that all persons similarly situated should be treated alike." *Fogle*, 435 F.3d at 1260 (quotation omitted). Mr. Fisher does not allege that he was treated differently than other inmates because he belongs to a suspect class; therefore, he must show that he was similarly situated to the other inmates and "that the difference in treatment was

not 'reasonably related to legitimate penological interests.'" *Id.* at 1261 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

The placement of prisoners within OSP is in part discretionary. *See* Okla. Stat. tit. 57, § 138(D); *see also Wilson v. Jones*, 430 F.3d 1113, 1116 (10th Cir. 2005) (describing Oklahoma's statutory classification system as having both objective and subjective/discretionary components), *cert. denied*, 127 S. Ct. 158 (2006). The numerous subjective factors contributing to the classification of prisoners demonstrates the implausibility of Mr. Fisher's argument that "there are no relevant differences between [him] and other inmates that reasonably might account for their different treatment." *Fogle*, 435 F.3d at 1261 (quotation omitted). For the same reason, the discovery Mr. Fisher requested about other prisoners' institutional records would not have proven his equal protection claim. Consequently, the district court properly rejected the equal protection claim without allowing discovery.

*Access to Court and Confiscation of Photographs*

Mr. Fisher complains that the prison law library did not provide him with copies of cases from circuits other than the Tenth Circuit, which defendants do not dispute[3]. He argues that he needs access to those cases because the Tenth Circuit often cites to them. To state a claim for denial of access to the courts, an

---

[3] He has abandoned on appeal his claim that he was denied access to the law library.

inmate must show that he suffered an injury caused by "shortcomings in the library or legal assistance program." *Lewis v. Casey*, 518 U.S. 322, 351 (1996); *accord Wardell v. Duncan*, 470 F.3d 954, (10th Cir. Nov. 30, 2006). Mr. Fisher has not asserted that the lack of other-circuit authority "hindered his efforts to pursue a legal claim," *Lewis*, 518 U.S. at 351. His hope of finding case support for future appeals is insufficient. Therefore, summary judgment on this claim was correct.

Finally, we consider Mr. Fisher's claim that his rights were violated when prison officials confiscated and destroyed photographs of H Unit sent to him by his brother. He concedes that he received identical photographs from his then-attorney. He has not identified any injury from the initial confiscation, let alone the concrete "injury in fact" required to establish standing. *Opala v. Watt*, 454 F.3d 1154, 1157 (10th Cir. 2006), *cert. denied*, 127 S.Ct. 738, 75 U.S.L.W. 3235 (Dec. 4, 2006) (No. 06-548). Consequently, Mr. Fisher, as the party seeking to invoke federal jurisdiction, has not met his burden to establish standing. *See id*. This claim is dismissed.

## Conclusion

Mr. Fisher's motion to supplement the record on appeal is denied as moot. The district court granted his motion to proceed without prepayment of costs and fees. He is reminded that he is obligated to continue making partial payments until the entire fee has been paid.

The judgment of the district court is AFFIRMED as to all claims except the one relating to the photographs; that claim is dismissed for lack of subject matter jurisdiction.

Entered for the Court


Stephen H. Anderson
Circuit Judge